UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAUDI ARABIAN AIRLINES - ROYAL FLIGHT DIVISION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Civil Action No. SA: 08-CV-0122-XR |
| | ) | |
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P., ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered Plaintiff SRF's Rule 59(e) Motion to Alter or Amend Order (docket no. 82), Defendants' Response, and Plaintiff's Reply.  After careful consideration, the Court will deny the motion.

**I. Background**

The facts of this case and its procedural history are set forth at length in this Court's Order granting Defendants' Renewed Motion for Judgment as a Matter of Law (docket no. 80), and will not be repeated here.  In summary, the Court found that Plaintiff SRF was pursuing claims against Defendants in the capacity of third-party beneficiary and/or assignee, and that it could not do so as a matter of law.  The Court found that, because SRF did not assert a first-party breach of contract claim, it could not recover against Defendants, and granted judgment as a matter of law in favor of Defendants.  Plaintiff now argues that the Court should reinstate the jury verdict in favor of SRF in the amount of "$550,000 based on L3Com's breach of contract, as the relevant law and trial evidence presented to the jury was sufficient for it to have rationally found in favor of SRF."

1

## II. Analysis

SRF argues that its "status as a third-party beneficiary to the Buyer-Seller Agreement (and SRF's argument to that effect at trial) in no way precludes its right of recovery under a direct breach of contract cause of action against L3Com" and that "SRF broadly pleaded breach of contract against L3Com in its Amended Complaint [Docket Entry 31] and, indeed, repeatedly urged at trial that all the agreements, including the 1995 interior modification agreement, between the parties must be read collectively to determine the rights and obligations of the parties." SRF asserts that "[s]uch a reading confirms that L3Com's obligation to provide adequate replacement seating survived the term of the original 1995 interior modification agreement, as well as the Settlement Agreement, and was encompassed by the Buyer-Seller Agreement (and Purchase Order)." SRF alleges that its Complaint asserts a claim for breach of contract that includes the 1995 Interior Modification Contract. SRF asserts that the Court failed to draw all reasonable inferences in favor of SRF because the Seat Purchase Agreement and Purchase Order encompass L3Com's original obligation arising out of the 1995 Interior Modification agreement to provide seats, even incorporating and referencing that agreement. SRF also points to the November 2002 letter in which L3Com acknowledged its remaining obligation to complete and deliver the new seats, which SRF states "is set out in the Amended Complaint and incorporated into SRF's breach of contract cause of action."

As an initial matter, contrary to SRF's belief, the Court did not find that the only remaining obligation that L3Com retained after the settlement was to fulfill the Buyer-Seller/Seat Purchase Agreement and Purchase Order. In its Order, the Court expressly noted that this was Defendants' argument; it was not a finding or conclusion of the Court. The Court never found that a first-party action was precluded. However, the Court did find that no first-party action was asserted, and that

conclusion remains unchanged.

Based on the pleadings and SRF's own statements to the Court, the Court disagrees with SRF's assertion that it made an "inaccurate" determination that SRF did not assert a direct breach-of-contract cause of action against Defendants. The Amended Complaint expressly states that SRF is suing as a third-party beneficiary. *See* Amended Complaint ¶ 10 ("This suit is brought by the intended third party beneficiary of the seat replacement agreement.")("The intended third party beneficiary now seeks to recover the amounts that remain due and owing under the seat replacement agreement from the successor in interest to the original contracting party."); ¶ 20 ("The seat replacement portion of the agreement for HM7 and HM8 involved a payment of $2,750,000.00 to Studio RD from Raytheon as reflected in Raytheon's purchase order #4500079582 (Collectively the 15 July 2001 agreement [the General Terms Agreement between Raytheon/L3Com and Studio RD Custom, LLC] and purchase order #4500079582 are referred to as the: 'Seat Replacement Agreement')."); ¶ 31 ("SRF as the authorized representative/agent of the Private Office, is entitled to recover the amounts that remain to be paid to Studio RD under the terms of its original agreement with Raytheon as the intended third party beneficiary of the Studio RD/Raytheon Seat Replacement Agreement."). At no time did SRF assert a claim under one of the agreements to which SRF and Defendants were parties, such as the original 1995 contract, the Settlement Agreement, or the November 2002 letter agreement.

Further, the measure of damages asserted by SRF was determined solely by the contract between L3Com and Raytheon, to which SRF was not a party and which it could only sue upon as third-party beneficiary or assignee. Amended Complaint ¶ 32 ("Upon information and belief the amount remaining to be paid by L3Com under the Seat Replacement Agreement is approximately

3

$550,000.00."); ¶ 41 ("SRF has made demand on L3Com to pay the remaining amounts due under the terms of the Seat Replacement Agreement."); ¶ 42 ("As a result of L3Com's breach, SRF has incurred damages in the approximate amount of $550,000.00 for which L3Com and L3Com Corp. are liable.").

Plaintiff's Amended Complaint sought a declaratory judgment that it was a third-party beneficiary of the "Seat Replacement Agreement between L3Com and Studio RD, and that Plaintiff, SRF is entitled to enforce the terms of the Seat Replacement Agreement and to recover any amounts that may be due under such agreement."  Though the third-party beneficiary breach-of-contract claim is entitled "breach of contract" and does not reference SRF's third-party beneficiary status, it incorporates the previous paragraphs and seeks damages as measured by the L3Com/Raytheon agreement.

Moreover, at the pre-trial conference, Plaintiff expressly acknowledged that it had not sued Defendants under the original 1995 contract.  Based on their theory of the case that the Settlement Agreement resolved all obligations under the original contract and that Defendants' only remaining obligation was to perform its obligations under the agreements with Studio RD, Defendants sought a motion in limine from the Court that would limit Plaintiff's assertions that any obligation remained to replace the seats under the original contract.  Defendant expressly stated that Plaintiff appeared to making claims for breach of contract that exceeded the scope of the third-party and assignee claims pleaded in the Amended Complaint.  Plaintiff opposed in part, noting that the obligations to replace the seats stemming from the original 1995 contract were integral to the case, but stated, "I understand what Mr. McKenzie I think is trying to do is he doesn't want causes of action against L3 based upon the 1995 contract and he is correct; we have not sued them under the original 1995

4

contract to install seats in this aircraft." SRF further agreed that "there is a release for that" and that none of SRF's proposed jury instructions related to the 1995 contract, but stated that discussion of the 1995 contract was necessary to put things in context. SRF stated that the problem was a "cause of action issue" and acknowledged that, if a contract claim under the 1995 contract was not pled or tried by consent, it should not be submitted to the jury.[1]

The jury charge, agreed to by Plaintiff, made clear that Plaintiff was suing as a third-party beneficiary. The jury was instructed that "Plaintiff Saudi Royal Flight is not a party to the contract on which it sues" and that "Plaintiff Saudi Royal Flight claims that L-3 breached the Seat Purchase Agreement and Purchase Order." The jury was asked to find, and did find, only that Defendants breached the Seat Purchase Agreement and Purchase Order, contracts to which SRF was not a party. The jury was not asked to find and did not find that Defendants breached an obligation under the 1995 contract, the Settlement Agreement, or any other promise made by Defendants to SRF. Further, the submission of jury question 2 regarding waiver of Defendants' obligation to SRF was submitted as part of SRF's third-party beneficiary claim. Though a favorable finding on the waiver issue would also have been required for SRF to sue Defendants on a direct breach claim, its submission and the jury's favorable finding cannot support a finding for SRF on a direct breach claim that was not asserted.

---

[1] In a somewhat contradictory statement, SRF also stated that it was asserting a claim against Defendants based on their obligation, which was part of the Settlement Agreement and General Terms Agreement (which are intertwined), to replace the seats (which originally included obtaining them from Studio RD, Inc. and delivering them to Studio RD Custom in Waco). However, SRF never asserted a direct breach of contract claim under the Original 1995 Contract, the Settlement Agreement, or the November 2002 letter agreement. And, as made clear in its arguments on the Rule 50(a) motion, discussed below, SRF's actual claim was not to enforce Defendants' promise to SRF to obtain and deliver replacement seats, but was an attempt to enforce Defendants' payment obligations under the Seat Purchase Agreement and Purchase Order with Studio RD.

During argument on Defendants' Rule 50(a) Motion for Judgment as a Matter of Law, Defendants argued that SRF did not sue for breach of an agreement to replace the seats in general, but only under the Purchase Order, and the only benefit that SRF would get from the Purchase Order was the seats, whereas SRF was suing for the money that Defendants agreed to pay Studio RD under the Purchase Order. SRF agreed that what it was really seeking was "enforcement of that payment" and that it was trying to enforce Defendants' obligation to pay for the seats. Defendants never made a promise to pay SRF $2.75 million toward the purchase of seats; L3/Raytheon agreed to buy the seats from Studio RD, Inc. for $2.75 million under the Seat Purchase Agreement and Purchase Order, both of which are contracts between L3/Raytheon and Studio RD. Thus, SRF could not pursue a first-party breach claim based on Defendants' promise to pay $2.75 million, even if Defendants entered into the Seat Purchase Agreement and Purchase Order to fulfill its obligation to provide seats. If Defendants simply had agreed to pay $2.75 million toward the purchase of the seats, SRF would not have had to prove that the purchase order was modified or that it fulfilled the terms of the purchase order, only that Defendants had agreed to pay $2.75 million toward the purchase of replacement seats and did not do so. Instead, Defendants' promise to SRF was to provide replacement seats, and the November 2002 letter acknowledged the continuing obligation for "completion and delivering of the new seats." But Plaintiff sued for the money due under the Seat Purchase Agreement and Purchase Order, not for seats due under an agreement between Plaintiff and Defendants. The Court did not "take for granted" Plaintiff's position that L3Com's obligation to pay for the replacement seats arose under the 1995 contract and continued beyond the Settlement Agreement and November 2002 letters. The Court was always aware of this aspect of Plaintiff's position, but was also aware that Plaintiff was not pursuing a first-party claim based on

L3Com's direct obligation to SRF to provide replacement seats.  Plaintiff is the master of its case, and Plaintiff did not sue under any of those agreements between itself and Defendants, but instead sued on the agreements between Defendants and SRD.

Thus, the Court simply cannot conclude that SRF at any time alleged a direct, first-party breach of contract claim against L3Com; the claim was always asserted in SRF's capacity as third-party beneficiary.  And while SRF is correct that its capacity as a third-party beneficiary and its pursuit of that claim would not and does not preclude a first-party claim, it does not establish that SRF at any time asserted such a first-party claim, and the fact remains that SRF did not assert a first-party claim under the 1995 agreement, the Settlement Agreement, and/or L3Com's 2002 renewed commitment to provide replacement seats.  The fact that the agreements "are not discrete" but must be interpreted by their relation to one another does not change the fact that the theory of recovery asserted in the pleadings, briefing, and at trial was that of third-party beneficiary/assignee.

Though SRF argues, and this Court agrees, that we must accord great deference to the jury's verdict and draw all inferences in favor of the verdict, that does not apply to legal theories that were not tried and presented to the jury.  Though SRF argues that the evidence was sufficient for the jury to find in favor of SRF on a direct breach of contract claim, the Court cannot award SRF recovery on a claim it expressly did not pursue and which was not tried by consent, as acknowledged by SRF.  Defendants raised their legal argument at summary judgment and in their 50(a) motion for judgment as a matter of law.  Both times, Defendants pointed out that Plaintiff could not recover against them in the capacity of third-party beneficiary (or assignee) and, both times, Defendants asserted that SRF could have recovered on a first-party breach of contract claim, but for the settlement agreement.  At

no time did Plaintiff respond with an assertion that it was bringing such a first-party claim.[2]  The

Court is not required to resolve ambiguities and doubts in favor of a legal theory that was not tried.

### Conclusion

For the reasons stated herein, Plaintiff SRF's Rule 59(e) Motion to Alter or Amend Order

(docket no. 82) is DENIED.

It is so ORDERED.

SIGNED this 20th day of May, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2] Though SRF argues that it clearly asserted in its response to the motion for summary judgment that L3Com's duty to pay for the replacement seating arose out of its obligation under the original 1995 interior modification agreement, that argument was made as an element of SRF's third-party beneficiary claim, as SRF could not achieve third-party creditor beneficiary status unless the agreement was made to satisfy Raytheon/L3Com's existing obligation to SRF.